EDWARD McQUADE et al., Landlords, *v.* " JOHN " FRANCIS, Tenant.

EDWARD McQUADE et al., Landlords, *v.* " JOHN " MORAN, Tenant.

EDWARD McQUADE et al., Landlords, *v.* " JOHN " JENSEN et al., Tenants.

Municipal Court of the City of New York, Borough of Brooklyn, May 26, 1950.

*Abraham Pruzan* for landlords.

*Victor J. Ambrose* for tenants.

HERZKA, J. The above-entitled summary proceedings were tried together pursuant to stipulation, with the provision that separate decisions be rendered by the court in each proceeding.

The tenants all reside in the same building. The landlord alleges the installation of major capital improvements as a result of which orders were issued by the Office of the Housing Expediter on April 4, 1950, retroactively effective February 8, 1950. These orders purported to increase the rent of each apartment from $23 to $42 per month.

The increases were not approved by the city rent commission, nor has the Temporary State Housing Rent Commission authorized and established an increased maximum rent.

While it appears that new, substantial and additional facilities and services were provided by the landlord with the consent of the tenants, there is no proof of an oral or written agreement to pay a higher rent. It is the landlord's claim that there was an implied promise by the tenants to pay greater rent for the extra benefits received by them.

Agreements to pay increased rentals, even when made, do not become effective until approved by the administrator of the Temporary State Housing Rent Commission, and he may reduce

the amount agreed upon between the parties, if in his opinion it is excessive. (Rent and Eviction Regulations of the Temporary State Housing Rent Commission, Part III.)

Chapter 250 of the Laws of 1950 and the Rent and Eviction Regulations of the commission provide that no landlord of controlled residential premises shall be entitled to any upward adjustment of the rent prescribed on March 1, 1950, pursuant to the Federal act until ordered by the administrator, and that adjustments shall not be retroactive (L. 1946, ch. 274, § 4, subd. 4 as amd. by L. 1950, ch. 250).

This was designed to prevent the collection of excessive rent pursuant to an agreement executed under coercion or duress and made in a limited rental market.

Nevertheless, the landlord claims that because the adjustment was granted by the Office of the Housing Expediter after March 1, 1949, the rent is automatically increased to reflect the Federal adjustment and that approval of the State administrator is unnecessary.

In addition to the prohibitions against increases contained in the State Residential Rent Law (L. 1946, ch. 274, as amd. by L. 1950, ch. 250), section 31 of the Rent and Eviction Regulations provides: " Maximum rents may be increased or decreased only by order of the Administrator."

This must be read in connection with section 4 of the statute. It follows in part: " § 4. *General powers and duties of the commission.* 1. (a) At the time this act shall become effective, the commission shall establish maximum rents for housing accommodations which shall be the same as those prescribed on March first, nineteen hundred fifty, pursuant to the federal housing and rent act of nineteen hundred forty-seven, as amended, or local laws specified in chapter one of the laws of nineteen hundred fifty. Where there were different maximum rentals prescribed pursuant to such laws on March first, nineteen hundred fifty, the maximum rental established hereunder shall be the same as that prescribed pursuant to the local laws specified in chapter one of the laws of nineteen hundred fifty; provided, however, that where the rent paid on such date does not reflect any adjustment which was granted subsequent to March first, nineteen hundred forty-nine, pursuant to the provisions of the federal housing and rent act of nineteen hundred forty-seven, as amended, because of the provision by the landlord of new or additional services or facilities to which the tenant has agreed, the maximum rent for such housing accom-

modations shall be increased by the amount of such adjustment.'' (Rent and Eviction Regulations, § 21, to same effect.)

As this court reads the statute and the regulations, there is no provision for automatic increases where no order was issued by the Office of the Housing Expediter on or before March 1, 1950. Where an order has been issued by the Housing Expediter between March 1, 1949, and March 1, 1950, inclusive, the rent is fixed automatically to reflect the adjustment, provided it was for new and additional services or facilities furnished to the tenant with his consent by implication or express agreement.

It was the intention of the Legislature to automatically freeze the rent '' prescribed on March 1, 1950.'' In the instant case the increases were not granted until April 4, 1950, consequently approval by the administrator is needed.

Where no order was issued by the Housing Expediter on or before March 1, 1950, but was issued subsequent thereto, the rent '' prescribed on March 1, 1950 '' is the lower rent, i.e. the maximum rent actually in effect on March 1, 1950. The fact that the subsequent order was retroactive to a date prior to March 1, 1950, does not result in changing the rent which was '' prescribed on March 1, 1950.''

The only time when a consent of the administrator is not required for an increase is when the increase was granted between March 1, 1949, and March 1, 1950, as set forth in the sections referred to.

In every other instance with respect to controlled residential premises, approval of the administrator is required. Even when the parties now agree voluntarily to increase the dwelling space or the services, facilities, furniture, furnishings or equipment, the agreement must be in writing. It is subject to approval by the administrator, who may grant an adjustment only if the amount agreed upon between the landlord and the tenant does not exceed the rental value as determined by the administrator.

It must be admitted that this landlord is presently suffering hardship in view of the very substantial additional facilities now being furnished, without additional compensation. The tenants previously were obliged to provide their own heat and hot water. Now they enjoy the benefits of the newly installed central heating and hot water system. They need no longer provide their own fuel. They are also enjoying additional equipment and modern household fixtures. It is clear that

these new services and facilities were not within the contemplation of the parties when the present rents were originally agreed upon. But these are facts which may be brought to the attention of the administrator for consideration when an application is made for an adjustment of the maximum rent.

It is true that there is an interference with the usual right of a landlord and tenant to bargain and agree upon the amount of rent to be paid. But the restrictions which have been placed by the Legislature upon free dealing between landlords and tenants must be viewed in the light of conditions at the time of the passage of the Residential Rent Law and during the period for which it will remain effective.

Because of the serious public emergency which the Legislature found to exist in the housing of persons in this State, that body enacted safeguards designed to prevent exactions of unjust, unreasonable and oppressive rents. It gave the Temporary State Housing Rent Commission the exclusive right to establish maximum residential rents during the continuance of the acute shortage of dwellings. Conflicting rentals set by Federal and local regulations were thus eliminated. In providing for regulation and control of residential rents, the Legislature attempted to prevent abnormal increases, disruptive practices, uncertainty and dislocation of tenants until a normal market of free bargaining has been restored between landlords and tenants.

On occasion inequitable situations may arise. It should be borne in mind, however, that the act under which the commission functions only became effective on May 1, 1950, and it provides that the commission shall adopt regulations for the making of adjustments because of gross inequities. In the instant case it may be that the administrator will authorize and establish as the maximum rent, the amount fixed heretofore by the Housing Expediter. That, however, is the province of the administrator, not of this court.

The clerk of this court is directed to place these proceedings on the suspense calendar. They may be restored upon the issuance by the administrator of orders fixing higher maximum rents.